**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **RICK WILSON KNOX** | **CASE NO. 0506951EE** |
| **KIMBERLY JEANETTE HARRIS KNOX** | |
| | |
| **KIMBERLY HARRIS KNOX** | |
| | |
| **VS.** | **ADVERSARY NO. 060060** |
| | |
| **SALLIE MAE aka SLM CORPORATION,** | |
| **EDUCATIONAL CREDIT** | |
| **MANAGEMENT CORPORATION** | |

| | |
|---|---|
| W. McCollum Halcomb | Attorney for ECMC |
| Post Office Box 12005 | |
| Birmingham, AL  35202-2005 | |

Edward Ellington, Judge

**MEMORANDUM OPINION ON THE**
***MOTION TO ALTER, AMEND OR SET ASIDE ORDER***

 **THIS MATTER** came before the Court on the *Motion to Alter, Amend or Set Aside Order* filed on August 3, 2007, by Educational Credit Management Corporation and on the *Plaintiff's Response to Defendant's Motion to Alter, Amend or Set Aside Order* filed by the *pro se* Debtor, Kimberly Jeanette Harris Knox.  Having considered the motion and response and otherwise being fully advised in the premises, the Court finds that for the reasons expressed below the motion is well taken and should be granted.

**DISCUSSION**

**I.**

Rick Wilson Knox and Kimberly Jeanette Harris Knox filed a *pro se* petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2002. The Knoxes received their discharge on August 2, 2006.

On February 1, 2006, Kimberly Jeanette Harris Knox (Debtor) filed the above styled adversary proceeding against Sallie Mae aka SLM Corporation. Educational Credit Management Corporation (ECMC)[1] was added as a defendant per an order entered on September 16, 2006. In her *Motion for Discharge of Student Loans*, the Debtor alleges that repayment of her student loan would be an undue hardship and requests that the Court discharge her student loan. In its *Answer*, ECMC disputed that repayment of her student loan would be an undue hardship on the Debtor.

On May 4, 2007, a trial was held on the Debtor's *Motion for Discharge of Student Loans* and ECMC's *Answer*. Prior to the trial, the parties entered into a *Joint Stipulation of Facts* (Stipulation), and filed the Stipulation with the Court on May 2, 2007. The parties stipulated to the following:

> 1. On October 22, 2003, Plaintiff, electronically submitted a Promissory Note for a Federal Family Education Loan Program ("FFELP"), Federal Consolidation Loan . . . .This Note is a student loan as contemplated under 11 U. S. C. § 523(a)(8).
>
> 2. A disbursement of $56,332.94 was made under the Note.
>
> 3. The guarantor of the Note was United Student Aid Funds, ("USAF").
>
> 4. On or about November 6, 2003, a Loan Consolidation Disclosure Statement and Repayment Schedule, ("Disclosure Statement"), was sent to Plaintiff. . . .The

---

[1] In its *Motion to Add ECMC as Defendant*, ECMC states that it had accepted the assignment and the transfer of the Debtor's two consolidation loans from United Student Aid Funds, and was therefore, the proper defendant in the adversary. Even though Sallie Mae was not dismissed as a defendant, the Court will refer to the defendant in this case simply as ECMC.

monthly payments for the Consolidation Loan were $310.23 for 299 payments and $299.59 for 1 payment.

5. On May 5, 2006, USAF assigned all right, title and interest in the Note to ECMC.

6. ECMC is a guarantor in the FFELP program and provides specialized guarantor services to the U. S. Department of Education and other FFELP guaranty agencies. ECMC is the type of entity contemplated under 11 U. S. C. § 523(a)(8).

7. Plaintiff did not make any payments under the Note. The Note was in forbearance from December 7, 2003 to March 27, 2006.

8. The balance of the Note, as of April 2, 2007, is $65,288.34, which consists of principal and interest.

*Joint Stipulation of Facts*, pp. 1-2, May 2, 2007.

At the conclusion of the trial, the Court orally delivered its Findings of Fact and Conclusions of Law into the record. The Court held that $12,265 of the Debtor's student loan was nondischargeable, with the balance owed to ECMC discharged. The Court ordered the Debtor to make the following payments to ECMC:

1. From August 2007 through and including November 2008: $75.00 per month.

2. From December 2008 through and including November 2009: $85.00 per month.

3. From December 2009 through and including March 2011: $95.00 per month.

4. From April 2011 through and including November 2014: $200 per month.

The Court entered an order memorializing its oral findings on July 26, 2007.

On August 3, 2007, ECMC filed its *Motion to Alter, Amend or Set Aside Order* (Motion). In its Motion, ECMC states that the Debtor had failed to meet her burden at trial, and therefore, ECMC asks the Court to reconsider its ruling and to declare the entire student loan nondischargeable. In her *Plaintiff's Response to Defendant's Motion to Alter, Amend or Set Aside Order*, the Debtor

denies that ECMC is entitled to the relief it requests.

## II.

Rule 59 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023[2], provides in relevant part:

**Rule 59 New Trials; Amendment of Judgments.**

. . . .

(e) **Motion to Alter or Amend a Judgment.** Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

Fed. R. Civ. Proc. 59(e).

The United States Court of Appeals for the Fifth Circuit has held that a Rule 59(e) motion is a motion that questions the correctness of a judgment. Further, the Fifth Circuit has held that "(r)econsideration of a judgment is an extraordinary remedy that should be used sparingly." *Templet v. Hydrochem, Inc.,* 367 F.3d 473, 479 (5th Cir. 2004)(citations omitted). "Rule 59(e) is properly invoked 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Texas Comptroller of Public Accounts v. Transtexas Gas Corp., (In re Transtexas Gas Corp.),* 303 F.3d 571, 581 (5th Cir. 2002)(citations omitted) "'These motions cannot be used to raise arguments which could, and should have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990)(citation omitted). Instead, a Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' that was not available before the judgment issued." *Dimopoulos v. Blakeway,* 2007 WL 1052551, at *1 (S.D.Tex. April 5, 2007)(citations

---

[2]As noted, Rule 59 is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023. From hereon in, the Court will use the term Rule 59.

4

omitted).

### III.

### A.

While the Debtor does not cite any specific code section in her motion seeking to have her student loan discharged, the Court finds that 11 U. S. C. § 523(a)(8)[3] is the pertinent code section. Section 523(a)(8) provides:

> § 523. Exceptions to discharge
>
> (a)  A discharge under section 727, . . .of this title does not discharge an individual debtor from any debt–
>
> . . . .
>
> (8)  unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
>
> > (A)(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > (ii)  an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> >
> > (B)  any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U. S. C. § 523(a)(8).

In *Tennessee Student Asst. Corp. v. Hood,* 541 U.S. 1905, 124 S.Ct. 1905, 158 L.Ed.2d 764

---

[3]Hereinafter all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

(2004), the United States Supreme Court found that § 523(a)(8) is "self-executing" and that "(u)nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Asst. Corp.,* 541 U.S. at 450. Therefore, in order for the Debtor to have her otherwise nondischargeable student loan declared dischargeable, the Debtor must prove that excepting the debt from discharge will impose an undue hardship on the Debtor and on her dependent.

"Undue hardship" is not defined in the Bankruptcy Code. "However, the statute requires a showing of 'undue' hardship; mere 'garden-variety' hardship is insufficient justification for a discharge of student loan debt." *Salyer v. Sallie Mae Servicing Corp. (In re Salyer),* 348 B.R. 66, 69 (Bankr. M.D. La. 2006)(footnotes omitted).

In order to evaluate the undue hardship determination of § 523(a)(8), the Fifth Circuit in *In re Gerhardt*[4] adopted the so called *Brunner* test, which was crafted by the Court of Appeals for the Second Circuit in *In re Brunner*.[5] In order to obtain a hardship discharge of a student loan under the *Brunner* three-prong test, a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and
>
> (3) that the debtor has made good faith efforts to repay the loan.

*In re Gerhardt,* 348 F.3d at 91, *citing, Brunner,* 831 F.2d at 396. *See also, Farrish v. U.S. Dept of*

---

[4] *U.S. Dept. of Education v. Gerhardt, (In re Gerhardt),* 348 F.3d 89 (5th Cir. 2003).

[5] *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2nd Cir. 1987).

*Education (In re Farrish),* 272 B.R. 456, 461 (Bankr. S.D. Miss 2001). "The debtor bears the burden of proving all three elements by a preponderance of the evidence [, and] (i)f the debtor fails to prove even one of these, the inquiry ends and the student loan cannot be discharged."[6]  Since ECMC alleges in its Motion that the Debtor failed to meet her burden at trial, the Court will review the record to see if the Debtor met her burden under *Brunner*.

**B.**

In determining what is a minimal standard of living, "(d)ebtors cannot satisfy this test 'merely because repayment of [the student loan] would require some major personal or financial sacrifices.' *Gerhardt* demands more than a showing of tight finances:  it requires that a debtor prove he cannot afford reasonably necessary living expenses if he is forced to repay his student loans." *In re Slayer,* 348 B.R. at 71 (footnote omitted).  "(T)he Debtor must show that her financial resources will allow her to live only at a poverty level standard for the foreseeable future if she is obligated to repay the student loan.  The debtor must also demonstrate that he or she is attempting to minimize living expenses and maximize financial resources." *Cadle Co. v. Webb (In re Webb),* 132 B.R. 199, 202 (Bankr. M.D.Fla. 1999)(citations omitted); *In re Farrish,* 272 B.R. at 461.  "Specifically, the bankruptcy court must determine what amount is minimally necessary to ensure that the debtor's needs for care, including food, shelter, clothing, and medical treatment, are met.  Once that determination is made, the question is whether the debtor has additional funds with which to make payments toward her student loans." *Gill v. Nelnet Loan Services, Inc. (In re Gill),* 326 B.R. 611, 626 (Bankr. E.D. Va. 2005)(citations omitted).

---

[6]*Slayer v. Sallie Mae Servicing Corp. (In re Slayer),* 348 B.R. 66, 70 (Bankr. M.D. La. 2006) (footnotes omitted).

7

Upon review of the record, the Court finds that the Debtor has not met her burden under the first prong of the *Brunner* test to show that the she cannot maintain, based on current income and expenses, a "minimal standard of living for [her]self and [her] dependents if forced to repay the loan." The Debtor has not shown that she is both minimizing expenses and maximizing income, and as this Court recently held, this obligation encompasses the total household income and expenses. Ellington, J. *Wynn v. Educational Credit Management Corp. (In re Wynn),* Case No. 0101075EE, Adversary No. 060174, *Findings of Fact and Conclusions of Law on the Motion for Summary Judgment*, Sept. 28, 2007.

In the case at bar, the Debtor testified that her gross weekly income was $600, which would be a gross yearly income of $31,200. Transcript of Record at 15, *Motion for Discharge of Student Loans* (May 4, 2007). Debtor also testified that her monthly expenses totaled $2034.92. Transcript of Record at 37-39, *Motion for Discharge of Student Loans* (May 4, 2007).

As to her husband's income, the Debtor testified that her husband was injured on the job in March of 2004 and received worker's compensation. In August or September of 2006, Mr. Knox received a lump sum worker's compensation award of $8000. She further testified that at the time of the trial, Mr. Knox was not working nor had he applied for any disability benefits from the Social Security Administration. Transcript of Record at 32-36, *Motion for Discharge of Student Loans* (May 4, 2007). Consequently, the Court finds that the Knoxes have not done all that they can do to maximize their income.

The Court further finds that the Debtor and Mr. Knox have not minimized their expenses. The Debtor testified that almost a year after she consolidated her student loans and after Mr. Knox was injured and not working, they purchased a new vehicle on September 4, 2004. The Knoxes reaffirmed this debt on their automobile and are paying monthly installments of $404.97. At the time

8

of trial, the Debtor stated that they had approximately 45 or 46 payments remaining. Transcript of Record at 40, *Motion for Discharge of Student Loans* (May 4, 2007). The Court in *Hornsby v. Tennessee Student Assistance Corp. v Hornsby (In re Hornsby),* 242 B.R. 647, 652 (Bankr. W.D.Tenn. 1999), found that the fact that the debtors had purchased an automobile with a payment over $400 as a factor in its decision to deny the discharge of the debtors' student loans.

Upon examination by the attorney for ECMC, the Debtor testified that they were paying for cell phones, cable and high speed internet access. The Debtor stated that the $99 monthly expense for cell phone service was for a total of four cell phones, which included cell phones for other family members. The Debtor stated, however, that they could not reduce the number of phones at this time because they were under a contract for another 16 months or so. Transcript of Record at 42-43, *Motion for Discharge of Student Loans* (May 4, 2007). In addition, the Debtor testified that the $147 monthly expense for electricity included high-speed internet service and basic cable, and if they gave up the internet service and cable, she stated that the monthly bill would be approximately $70. Transcript of Record at 43-44, *Motion for Discharge of Student Loans* (May 4, 2007) The Court finds that paying for four cell phones, cable and high speed internet access does not "show that [the Knoxes] are living a minimal lifestyle that does not include unnecessary expenses." *Southard v. Educational Credit Management Corp. (In re Southard),* 337 B.R. 416, 420 (Bankr. M.D.Fla. 2006). However, even if these expenses are not considered unnecessary, the Debtor's own testimony shows that they had a minimum of $350 a month in excess income over their expenses.

While not controlling, several courts have held that the minimal standard of living is at or near the poverty level. *See In re Southard,* 337 B.R. at 420; *In re Webb,* 132 B.R. at 202. This Court finds that the federal poverty guideline is a useful yardstick for determining what is a minimal

9

standard of living. In 2007, the federal poverty guideline for a family of two is $13,690[7]. At the time of the trial, the Knoxes had a household income of $31,200, which is more than two times above the federal poverty guideline. Other courts who have had debtors whose income is two or three times the federal poverty guidelines have found that to be a factor that weighed against the debtor. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 436 (6th Cir. 1998)(debtors' income would exceed $36,000, while the poverty guideline for a family of five was $17,710); *Ledbetter v. U. S. Dept. of Education (In re Ledbetter),* 254 B.R. 714 (Bankr. S.D.Ohio 2000)(debtor's income was $24,000, while the poverty guideline for a family of one was $8,240).

Since the Knoxes have failed to do all that they can in order to maximize their income and since they could reduce some of their expenses without causing their lifestyle to fall below a minimal standard of living and since the Knoxes household income is more than two times the federal poverty guideline for a family of two, the Court finds that the Debtor has not met her burden under the first prong of the *Brunner* test. Therefore, the Debtor's student loan is nondischargeable.

## C.

As the Debtor has failed to carry her burden under the first prong of the *Brunner* test, it is unnecessary for the Court to address the remaining elements. However, the Court finds that the Debtor failed to meet her burden under the third prong of the *Brunner* test because the Debtor failed to prove that she has made a good faith effort to repay the loan.

The Debtor testified that she had paid a total of $1200 ($100 payments for twelve months) on her student loans prior to the 2003 consolidation and that she has not made any payments since the 2003 consolidation. Transcript of Record at 35, *Motion for Discharge of Student Loans* (May 4,

---

[7]Annual Update of the HHS Poverty Guidelines, 72 Fed. Reg. 3147-01 (January 24, 2007).

2007).

> The good faith analysis requires the Court to consider the Debtor's "efforts to obtain employment, maximize income, and minimize expenses." *In re Frushour,* 433 F.3d 393, 402 (4th Cir. 2005)(citing *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn),* 339 F.3d 559, 564 (7th Cir. 2003)). Accordingly, good faith "encompasses a notion that the debtor may not willfully or negligently cause her own default, but rather her condition must result from factors beyond her reasonable control." *In re McMullin,* 316 B.R. 70, 78 (Bankr. E.D. La. 2004)(citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993))(internal quotations omitted).

*In re Russ,* 365 B.R. at 645.

While the Court acknowledges that the Debtor and her husband have had difficulties in their lives, the Court does not believe the Debtor has shown where she has acted in good faith in regard to repaying her student loan. In addition, the Debtor testified that she had not attempted to take advantage of any of the repayment programs, such as the William D. Ford Program, which are offered to borrowers who are unable to meet their contractual obligations on their student loan. Transcript of Record at 35-36, *Motion for Discharge of Student Loans* (May 4, 2007). "A debtor's effort to seek out loan consolidation options that make the debt less onerous is an important indicator of good faith. 'Although not always dispositive, it illustrates that the debtor takes her obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances.'" *In re Salyer,* 348 B.R. at 72 (footnotes omitted).

## CONCLUSION

Upon a review of the record, the Court finds that the Debtor has failed to meet her burden under the first and third prong of the *Brunner* test. "(W)hen a student loan borrower accepts money from the government, she strikes a bargain. And '[l]ike all bargains, it entails risk. It is for each student individually to decide whether the risks of future hardship outweigh the potential benefits of a deferred-payment education.' *Brunner,* 46 B.R. at 756." *Brightful v. Pennsylvania Higher*

11

*Education Asst. Agency (In re Brightful),* 267 F.3d 324, 331 (3rd Cir. 2001).  The Debtor struck her bargain, and while she may have experienced hardships since she obtained the student loans, these hardships are not "undue" as required under  § 523(a)(8).

ECMC has met its burden under Rule 59, and therefore,  the *Motion to Alter, Amend or Set Aside Order* is well taken.  Consequently, the July 26, 2007, *Order* should be set aside.

A separate judgment will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.